MARYANNA PIASCYK ET AL. *vs.* MARY MALON ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 6th—decided March 21st, 1933.

*William S. Hyde,* for the appellant (defendant).

*Walter F. Torrance,* for the appellees (plaintiffs).

AVERY, J. The plaintiffs, Maryanna and Anthony Piascyk, brought this action against Mary Malon. In the first count of their complaint, they sought to recover against her as the endorser of a promissory note

for $8600 made by Bronislaw Domanski and Stanislaw Sumoski. In the second count, they claim that the defendant induced them by fraud to purchase the note in question, and ask damages for the fraud. The defendant filed an answer, denying certain allegations of the complaint, and a counterclaim for $1840, the unpaid balance of the purchase price of the note. Pending the action, Maryanna Piascyk died; and her husband, Anthony, as administrator, was substituted as party plaintiff.

The court rendered judgment for the plaintiffs to recover $7612.50 damages upon the first count, and $5983.33 upon the second count, with the provision that payment on either count would reduce the amount due the plaintiffs upon the other, as suggested by us in *Commonwealth Fuel Co.* v. *McNeil,* 103 Conn. 390, 404, 130 Atl. 794; and it has found these facts: In 1925, the defendant owned two buildings in New Britain. The premises were subject to a first mortgage for $6000 and to a second mortgage to Anthony Nicze-wicz, the defendant's husband, for $1900. The second mortgage was payable in semiannual instalments of $200 each. April 17th, 1925, the defendant sold the premises to Bronislaw Domanski and Stanislaw Su-moski for $20,500. The purchase price was paid as follows: $4000 in cash, the assumption of the first mortgage of $6000 and of the second mortgage of $1900, and by executing and delivering to the de-fendant a third mortgage for $8600. Domanski and Sumoski paid the first two instalments on the second mortgage as they became due. Before the third in-stalment became due, the mortgage was attached by the defendant, and no further payments of interest or principal were ever made thereon. The attachment was released before February 16th, 1929. On that date, the balance due on the third mortgage then

owned by the defendant was $7550 and the defendant sold the mortgage to the plaintiffs for $6840 with recourse, of which sum $5000 was paid in cash and an order given on a savings bank for the balance, $1840. To induce the plaintiffs to purchase the mortgage, the defendant fraudulently represented to them there was then due on the second mortgage only $150 when, in fact, the amount due was in excess of $1500; she further represented that the makers of the note were then financially responsible and well able to carry the mortgaged premises when, in fact, they were financially irresponsible, which fact she knew; she further represented that all tenements in the mortgaged premises had been continuously rented during the previous year and were then all rented, which facts were untrue and known by her to be untrue; and further represented that interest due on the note from October 1st, 1928, to February 16th, 1929, was then due and could be collected by the plaintiffs, when, in fact, she had already collected it. The plaintiffs believed these representations and purchased the note from the appellant relying thereon. On February 18th, 1929, two days after the note was purchased, the plaintiffs, having been informed that they had made a bad bargain, stopped payment on the savings bank order for the balance of the purchase price, $1840. Thereafter, on March 11th, 1929, Anthony Niczcwicz, who owned the second mortgage, commenced an action to foreclose the same. The plaintiffs entered an appearance in this action but filed no pleading. On April 29th, 1929, judgment was rendered for the plaintiff in the foreclosure action for $1683.40; and June 20th of that year, the title in the property became absolute in the foreclosing mortgagee. A payment of $150 interest due on the plaintiffs' third mortgage on April 17th, 1929, was not paid and no notice was given to the defendant.

A like payment of interest which became due October 17th, 1929, was not paid and no notice was given her. On Friday afternoon, November 29th, the note was duly presented to the makers and demand for payment was made of the amount then due, and refused. On November 30th, 1929, the plaintiffs brought the present action on the mortgage note. On Monday, December 2d, 1929, the attorneys for the plaintiffs, who lived in New Britain, attempted to give the defendant, who lived in Waterbury, notice of dishonor of the note, but because of her absence from her home were unable to do so; but finally succeeded in doing so the next day, December 3d, 1929, when, upon demand of the amount then due, she unequivocally refused payment of the whole or any part of the note. The plaintiffs never returned or offered to return to the defendant the note or mortgage purchased by them.

Upon this appeal, the defendant assigns error, first, in the finding of the court that demand was made upon the defendant as an endorser within a reasonable time after the note had been dishonored; second, in rendering judgment for the plaintiffs on the first count when they had not returned or offered to return the note and mortgage; third, in failing to render judgment for the defendant upon her counterclaim; and, fourth, in the amount of damages awarded on the first and second counts. We shall discuss these claims in their order.

The appellants claim that, as the parties resided in different places, under General Statutes, § 4421, the notice of dishonor, in order to hold the defendant as an endorser, should have been given to her not later than Monday, the demand upon the makers having been made upon the Friday previous. This claim proceeds upon the theory that the note in this case was negotiable, and subject to the provisions of the Negoti-

able Instruments Act. It was so treated by the parties at the trial, and by the trial court. However, it is apparent that the note was dated April 17th, 1925, was in the sum of $8600, and contained a provision for the payment of interest at six per cent, with a further payment of $150 every six months on account of principal until the second mortgage on the premises was paid, after which the semiannual payments of principal were to be $350 each. It also contained an acceleration clause in case of failure to pay any instalment of principal or interest, taxes, water rents or other municipal assessment upon the property; and, finally, it contained a provision whereby the makers agreed to pay all taxes levied against the same loan against the holder. The note was clearly a nonnegotiable note. *Mechanics Bank* v. *Johnson,* 104 Conn. 696, 700, 134 Atl. 231; *Schumacher* v. *Miller,* 111 Conn. 568, 569, 150 Atl. 524. In *Mazurkiewicz* v. *Dowholonek,* 111 Conn. 65, 149 Atl. 234, we held that Chapter 146 of the Public Acts of 1927, which purported to validate and confirm the negotiability of such notes, was ineffective to change their character from nonnegotiable to that of negotiable instruments; and we there restated our rule that the endorser of a nonnegotiable note warrants that it is justly due and payable according to its tenor, that the maker shall be able to pay it at maturity, and that it is collectible by the use of due diligence. Due diligence does not require the holder of a note to bring suit against a maker when such suit would be fruitless. *Allen* v. *Rundle,* 50 Conn. 9; *Beitler* v. *Rudkin,* 104 Conn. 404, 408, 133 Atl. 214; *Gillespie* v. *Wheeler,* 46 Conn. 410, 411; *Mazurkiewicz* v. *Dowholonek, supra,* 71. The finding of the court that the makers of the note were financially irresponsible excuses the plaintiffs from

first bringing suit against the makers before instituting an action against the endorser.

By the terms of the note, if any instalment of principal or interest was not paid when due, the entire unpaid balance became due and payable on demand. The fact that, when an instalment of the principal became due on April 17th, 1929, and was not paid, the plaintiffs did not demand payment of the whole balance did not alter their right to make such a demand when, thereafter, another instalment became due on October 17th, 1929, and was unpaid, and it was sufficient if the demand was made in a reasonable time after the latter date. *Schumacher* v. *Miller,* 111 Conn. 568, 150 Atl. 524. It was not until that demand was made that the entire balance became due and the defendant as endorser became liable therefor. That the premises secured by the mortgage had, in the meantime, been foreclosed by the prior mortgagee did not alter the obligation of the parties upon the note. There was no want of diligence upon the part of the plaintiffs in demanding payment of the entire amount of the note on November 29th, 1929. *Warneke* v. *Preissner,* 103 Conn. 503, 507, 131 Atl. 25.

The claim of the appellant that the plaintiffs were not entitled to judgment on the first count because they had not returned or offered to return the note, cannot be sustained. This present action was not brought by the plaintiffs to rescind their contract with the defendant, but was an action on the note itself, and for damages for fraud in inducing them to purchase it. Under these circumstances, the return of the note or the mortgage was not necessary. *Lowe* v. *Hendrick,* 86 Conn. 481, 484, 85 Atl. 795; *Bitondi* v. *Sheketoff,* 91 Conn. 123, 126, 99 Atl. 505; *Burke* v. *Hindman,* 56 Ore. 545, 550, 109 Pac. 380; 41 C. J. 666.

It is conceded that the plaintiffs, when they bought

the note on February 16th, 1929, paid $5000 in cash and the balance, $1840, by an order upon a savings bank, and that they stopped payment on the savings bank order and never paid the $1840 balance upon the purchase price of the note. The appellant, therefore, is entitled to be credited on both counts with the amount of the counterclaim ($1840) with interest thereon from February 16th, 1929. The trial court, in giving judgment, disregarded the two unpaid instalments due in April and October, 1929, upon the theory that the note was negotiable, and no notice of dishonor was given to the endorser. From its ruling in that regard, no appeal was taken. As we have seen, however, the note was nonnegotiable, and notice of dishonor was not required; and as a new judgment must be entered in favor of the plaintiffs on the first count, it should be for the amount due on the note February 16th, 1929 ($7550), with interest to the date of judgment, less the amount of the counterclaim ($1840), with interest for the same period.

With regard to the second count, the rule of damages in case of fraud is the difference in value of the property at the time of the sale and what it would have been worth if it had been as represented. *Ford* v. *Dubiskie & Co., Inc.*, 105 Conn. 572, 578, 136 Atl. 560; *Okoomian* v. *Brandt*, 101 Conn. 427, 430, 136 Atl. 560; *Fairfield F. & M. Co., Inc.* v. *Griffin*, 108 Conn. 511, 513, 144 Atl. 43. The court has found that on February 16th, 1929, the date of the sale of the mortgage, the encumbrances against the property, exclusive of unpaid interest and taxes, were a first mortgage of $6000, a second mortgage of $1500, and a third mortgage of $7550, totalling $15,050; and that the premises on that date were worth the sum of $17,700. The court has further found that in the April following, when the property was foreclosed, the plaintiffs did

not redeem. No reason appears in the finding why the plaintiffs did not redeem and protect their apparent equity. Furthermore, it was part of the transaction by which the note was assigned that the defendant should endorse it. It does not appear in the finding that the defendant is not financially responsible. From this finding, therefore, we are not able to say that the note, at the time of the sale, was not worth as much as represented, and that the plaintiffs had suffered any damage by reason of the fraudulent representations of the defendant.

There is error; the cause is remanded to the Superior Court with directions to render judgment for the plaintiffs on the first count in accordance with this opinion, and for the defendant on the second count.

In this opinion the other judges concurred.